# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### SPARTANBURG DIVISION

| | | |
|---|---|---|
| Charles Ray Powell, | ) | Case No.: 7:10-CV-03170-HFF -KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **\*\* AMENDED \*\*** |
| vs. | ) | **COMPLAINT** |
| | ) | |
| Media General Operations, Inc., | ) | |
| | ) | (**Jury Trial Demanded**) |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff, complaining of the Defendant herein, would respectfully show unto this Honorable Court as follows:

## JURISDICTION AND PARTIES

1) Plaintiff is a citizen and resident of Greenville County, South Carolina. All acts complained of herein occurred in the Counties of Greenville and Spartanburg, in the State of South Carolina;

2) Defendant, Media General Operations, Inc. is a corporate entity organized and existing pursuant to the laws of one of the states of the United States which does business and owns property in Spartanburg and Greenville Counties of the State of South Carolina and its principal place of business is in Spartanburg County;

## BACKGROUND/FACTS

3) Plaintiff incorporates all prior allegations, where not inconsistent, as if fully set forth herein;

4)  Plaintiff was employed by Defendant from February 2007 through November 16, 2009 as a photojournalist. Plaintiff is also an honorably discharged veteran who served in the United States Army from 1978 through 1983;

5)  On or about October 18, 2007, Plaintiff suffered a serious work related injury when his company vehicle was rear-ended in a vehicular accident, through no fault of Plaintiff. This accident resulted in a cervical disc herniation and spinal cord compression of Plaintiff;

6)  Thereafter, Plaintiff sought medical attention for his injuries. After twenty-two months of treatment and recuperation, during which Plaintiff continued to perform all the essential functions of his job as a photojournalist for Defendant, Plaintiff resolved his Worker's Compensation claim on August 10, 2009;

7)  Three months later, on or about November 16, 2009, Defendant terminated Plaintiff from his employment for pretextual reasons. Specifically, Defendant assigned Plaintiff to work with a new reporter named Diane Lee. Plaintiff had worked with many reporters over the years, but had never previously worked with Ms. Lee. On the dates at issue, Ms. Lee and Plaintiff were listening to the radio station WORD, which was reporting on the shooting at Fort Hood;

8)  The Fort Hood shooting was a mass shooting that took place on November 5, 2009, at Fort Hood—the most populous US military installation in the world, located just outside Killeen, Texas—in which the gunman killed 13 people and wounded 30 others.

9)  The sole suspect in the shooting is Nidal Malik Hasan, a U.S. Army major serving as a psychiatrist. He was shot by Department of the Army Civilian Police officers,

and is now paralyzed from the chest down. However, Hasan has been charged with 13 counts of premeditated murder and 32 counts of attempted murder under the Uniform Code of Military Justice; he may face additional charges at court-martial;

10) Hasan is an American-born Muslim of Palestinian descent. Internal Army reports indicate officers within the Army were aware of Hasan's tendencies toward radical Islam since 2005. Additionally, investigations before and after the shooting discovered e-mail communications between Hasan and Yemen-based cleric Anwar al-Awlaki, who quickly declared Hasan a hero, as "fighting against the U.S. army is an Islamic duty";

11) When it became known to the media that the shooter was a Muslim, on November 11th or 12th of 2009, Plaintiff grimly commented, "That's a shocker that a Muslim would be a terrorist!" Ms. Lee responded, "Not all Muslims are terrorists." Plaintiff then responded that "Well, that might be so, but it seems to me that all terrorists are Muslim." Both Ms. Lee and Plaintiff are (or were) members of the media and this incident was a topic of much political discussion and debate and were clearly a discussion about matters of public concern. This discussion took place in the privacy of the Defendant's company vehicle. Ms. Lee is not a Muslim;

12) Thereafter, Defendant's agent, Dan Cates (Defendant's News Director) instructed Plaintiff to drive to Spartanburg to meet with Phil Lane (Defendant's VP and General Manager). Upon meeting with Lane, Lane told Plaintiff that Ms. Lee purportedly complained to Defendant that Plaintiff's comments about the Fort

Hood shootings were "offensive" and "violated company policy." Lane asserted that "corporate" instructed him to terminate Plaintiff's employment. Dan Cates thereafter instructed Plaintiff to tender his car keys, door pass and cell phone." Plaintiff asked Lane and Cates to allow him to discuss and refute the allegations allegedly made by Ms. Lee, but Lane and Cates simply said, "We can't help you. Call corporate." When Plaintiff questioned whether this had to do with his Worker's Compensation claim, both Cates and Lane initially refused to answer. Finally, Lane said, "I don't know what you are talking about." Defendant's agents then escorted Plaintiff to a waiting vehicle and took him to his residence. Plaintiff's personal effects were thereafter overnighted to him;

**FOR A FIRST CLAIM**
(<u>WORKER'S COMPENSATION RETALIATORY DISCHARGE</u>)

13. Plaintiff incorporates all prior allegations, where not inconsistent, as if fully set forth herein;

14. On or about October 18, 2007, Plaintiff suffered a worker's compensation injury and reported the same to his employer, the Defendant. Plaintiff returned to work shortly thereafter. As a result of the injury Plaintiff suffered, he pursued workers' compensation benefits for his permanent injuries;

15. After Plaintiff's Workers' Compensation injury, Defendant singled out Plaintiff for disparate treatment and/or treated him more harshly in the terms and conditions of his employment, contrary to South Carolina law. These incidents include punishing Plaintiff for a humorous email pertaining to a "lost puppy" while not disciplining Plaintiff's peers for similar humorous emails pertaining to

      Charles Barkley and others. Essentially, Plaintiff was being singled out for disparate treatment;

16. On or about August 10, 2009, Plaintiff and Defendant resolved their workers compensation dispute. Just less than three months and a week later, Defendant discharged Plaintiff for the pretextual reason of the comments about terrorists. Plaintiff is informed and believes all these actions were the result of his institution and pursuit of a workers' compensation action;

17. Accordingly, Plaintiff requests the triers of fact award his lost wages, actual damages, reinstatement and such other and further relief deemed appropriate and proper under the law;

### FOR A SECOND CAUSE OF ACTION
### (Termination in Violation of Public Policy)

18. Plaintiff incorporates all prior causes of action and allegations, where not inconsistent, as if fully set forth herein.

19. Plaintiff was employed in the news industry as a photojournalist.

20. As a result of the type of business Plaintiff and Defendant are engaged in, journalists, like Plaintiff, often discuss and comment upon current affairs when developing angles for stories and projects. In one such case, Plaintiff was discussing with a reporter, in the privacy of the company vehicle, the shootings that occurred at Fort Hood in the first week of November 2009. As a result of Plaintiff's view on the subject, as recounted above was discussion of a matter of public concern and covered under South Carolina statutory and common law as protected speech;

21. Defendant, by and through its agents, slandered Plaintiff by calling him a racist, bigoted and intolerant and then wrongfully terminated Plaitniff's employment for what Defendant labeled "racist" remarks about Muslims.

22. These matters were matters of public concern and were especially matters to be openly discussed in the news industry. Defendant's termination of Plaintiff's employment for his political opinions about a matter of public concern, is against the public policy of South Carolina, as espoused in its statutes and Code and constitutes a wrongful discharge in violation of South Carolina's public policy.

23. As a direct and proximate result of that termination, Plaintiff has been deprived all of the benefits of his employment relationship with the Defendant and that such deprivation was in violation of public policy. Accordingly, Plaintiff would respectfully request that the trier of fact award him such actual, compensatory and punitive damages as the trier of fact sees fit for the wrongful termination of the Plaintiff's employment in violation of public policy including all of the benefits of which Plaintiff has been deprived through the Defendant's wrongful actions.

### FOR A THIRD CAUSE OF ACTION
### (DEFAMATION)

24. Plaintiff incorporates all prior causes of action and allegations, where not inconsistent, as if fully set forth herein.

25. Defendant published false statements to Plaintiff's co-employees (including Jason Parker) and third parties (including future employers) asserting the Plaintiff was a racist, bigot and/or intolerant of other races and religions. Plaintiff's employment was purportedly terminated as a result of said action.

26. Defendant, by and through its agents, knew or should have known the defamatory publications about Plaintiff were false when they made them.

27. Defendant, by and through its agents acted with actual malice and ill will toward Plaintiff and with the intent to harm him and severely damage his reputation.

28. The published expressions by said Defendants impeached the integrity and reputation of the Plaintiff and subjected him to public contempt and/or ridicule and injured and damaged him in his profession and occupationBecause the published expressions about the Plaintiff damaged him in his profession and occupation, Defendant is liable to Plaintiff for slander *per se* and damages are thus presumed.

29. Because some of the published expressions about the Plaintiff by Defendant were in writing, damages are also presumed.

30. The defamation of Plaintiff by Defendant was made in reckless disregard for the truth and Defendant knew said statements were false when they were made.

31. That a direct result and consequence of the defamation of Plaintiff by Defendant, Plaintiff has and will suffer special damages, loss of reputation, mental anguish, emotional distress, pain and suffering, damage to his profession and occupation and ability to earn income now and in the future.

32. The Plaintiff is entitled to actual and punitive damages from the Defendant.

**WHEREFORE,** having fully stated his claims against Defendant, the Plaintiff respectfully prays that the trier of fact award his the following:

1.) that a jury of Plaintiff's peers award Plaintiff such actual, compensatory, punitive damages;

2.) The Court, sitting in equity, award Plaintiff equitable relief as permitted under the law of the State of South Carolina; and

3.) that the trier of fact award such other and further relief as it deems just and proper.

<u>s/Candy M. Kern-Fuller</u>
Candy M. Kern-Fuller, SC Bar No. 9149
**Upstate Law Group, LLC**
200 East Main Street
Easley, South Carolina 29640
(864) 855-3114
(864) 855-3446 (facsimile)
Candy@upstatelawgroup.com

**Attorney for Plaintiff**

**Dated:**     January 7, 2011