IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Charles R. Powell, ) | |
| ) | Civil Action No. 7:10-3170-HFF-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Media General Operations, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's first and second motions to dismiss (docs. 7, 16). The defendant removed the case to this court on December 14, 2010, based upon the diversity of the parties. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

The plaintiff alleged in his complaint, which was filed in state court, that the defendant, his former employer, terminated his employment for pretextual reasons. He alleged claims for workers' compensation retaliatory discharge, termination in violation of public policy, and defamation. The defendant filed its first motion to dismiss on December 21, 2010. Thereafter, within 21 days after the filing of the motion, the plaintiff filed an amended complaint on January 7, 2011. *See* Fed.R.Civ.P. 15(a). The defendant filed a second motion to dismiss on January 19, 2011, based upon the plaintiff's amended complaint. The plaintiff filed his response in opposition to the second motion to dismiss on February 14, 2011. Based upon the foregoing, the defendant's first motion to dismiss (doc. 7) is now moot. Accordingly, this court will consider only the second motion to dismiss (doc. 16).

**FACTS PRESENTED**

The plaintiff alleges in his amended complaint that he was hired by defendant Media General in February 2007 as a photojournalist. On October 18, 2007, he was involved in a car accident while at work. On that same day, he filed a workers' compensation claim for his injuries. In August 2009, almost two years after the accident, his workers' compensation claim was resolved. In early November 2009, the plaintiff discussed with a co-worker the shootings that had recently occurred at Fort Hood, Texas. In that conversation, the plaintiff stated, "That's a shocker that a Muslim would be a terrorist!" His co-worker responded, "Not all Muslims are terrorists." The plaintiff then responded, "Well, that might be so, but it seems to me that all terrorists are Muslim." Later that month, the plaintiff's employment was terminated. The plaintiff was told by the defendant's agents that the co-worker complained about his comments and he was being terminated from employment because his comments were offensive and violated company policy (comp. ¶¶ 4-12).

The plaintiff alleges that he was terminated (1) in retaliation for his initiation of a workers' compensation claim; and (2) because of the opinions he expressed on the Fort Hood shootings (*id.* ¶¶ 16, 22). The plaintiff further alleges that the defendant defamed him by stating, both to its employees and unnamed third parties, that he was "a racist, bigot, and/or intolerant of other races and religions" (*id.* ¶ 25).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted. Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell*

2

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570).  Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Furthermore, a complaint is insufficient if it provides bare assertions lacking additional factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (citing *Twombly*, 550 U.S. at 555). When determining a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled material allegations of the complaint as admitted and view them in the light most favorable to the non-moving party.  See *De Sole v. U.S.*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).

***Applicability of Federal Rule of Civil Procedure 8(a)***

The plaintiff argues that Federal Rule of Civil Procedure 8(a), as interpreted by *Iqbal* and *Twombley,* does not apply when the court sits solely in diversity question.  The plaintiff argues that holding diversity cases to a higher pleading standard than the plaintiff would be held to if the defendant was located in the same state is a violation of due process and equal protection and violates the *Erie* doctrine.  The plaintiff's argument fails.

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), "[f]ederal diversity jurisdiction provides an alternative forum [to state courts] for the adjudication of state-created rights, but it does not carry with it [the authority to generate] rules of substantive law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 418, 426 (1996). Accordingly, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* at 427. State law is considered "substantive" when it is "outcome

3

determina[tive]" – i.e., applying it would produce a different result than if federal law applied – and that fact implicates "the twin aims [underlying] the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Id.* at 428 (noting that "inequitable administration of the laws" means that applying the federal rule would "unfairly discriminate" between litigants) (citations omitted).

In *Hanna v. Plumer*, however, the Supreme Court held that the Federal Rules of Civil Procedure are not subject to a traditional *Erie* analysis. 380 U.S. 460, 469-70 (1965); *see also* Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 19 FEDERAL PRACTICE AND PROCEDURE § 4508 (2d ed. 2010) ("*Hanna* frees the federal courts from *Erie* concerns when one of the Rules is applicable . . . ."). Instead, the Federal Rules apply in all cases pending in federal court – despite a directly contradictory state law or rule of procedure – so long as the rule at issue neither (1) "exceed[s] the congressional mandate embodied in the Rules Enabling Act" nor (2) "transgress[es] constitutional bounds." *Hanna*, 380 U.S. at 464; *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611-12 (4th Cir. 1980) ("*Hanna* commands that unless Rule 15(c) is invalid because violative of the Rules Enabling Act or the Constitution, it controls decision without regard to any contrary state rule."). A Rule complies with these requirements if it governs "practice," "pleading," or is "rationally capable of classification" as a rule of procedure as opposed to a substantive rule of decision. *Hanna*, 380 U.S. at 472; *see also* Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 19 FEDERAL PRACTICE AND PROCEDURE § 4508 (2d ed. 2010).

As argued by the defendant, applying these principles here, Rule 8(a)(2), as interpreted by *Iqbal and Twombly*, applies to diversity cases pending in federal court despite any contrary state pleading rules. *See Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 813 (4th Cir. 1980) (noting that *Hanna* applies both to the Federal Rules themselves and court holdings "derived directly" from the Rules). Rule 8(a)(2) is plainly a valid exercise of congressional power under the Rules Enabling Act and the Constitution. *Hanna*, 380 U.S.

at 472 (expressly stating that rules governing "pleading" are valid and therefore applicable in federal court in diversity cases); *see also Ohio County Dev. Auth. v. Pederson & Pederson*, No. 5:09CV27, 2010 WL 391616, at *6 (N.D. W. Va. Jan. 26, 2010) (holding that, under *Hanna*, Rule 8(a)(2), as interpreted by *Twombly*, applies in diversity case despite contrary state pleading rule). As such, Rule 8(a)(2) is not only "rationally capable of classification" as a rule of procedure, it is a quintessentially procedural rule. *Hanna*, 380 U.S. at 472. Based upon the foregoing, the plaintiff's argument fails, and the court will apply Rule 8(a)(2) in analyzing the plaintiff's claims.

### *Wrongful Discharge*

The defendant first argues that the plaintiff's claim for wrongful discharge in violation of public policy does not fall within the narrow confines of that tort. A wrongful discharge claim is based on an exception to the doctrine of at-will employment. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). This exception, however, is a narrow one; it only applies when the employee is terminated in "violation of a clear mandate of public policy." *Id*. An employer commits such a violation only when it "requires an employee to violate the law or the reason for the employee's termination was itself a violation of criminal law." *Lawson v. S.C. Dept. of Corr.*, 532 S.E.2d 259, 260-61 (S.C. 2000); *see also Gleaton v. Monumental Life Ins. Co.*, 719 F.Supp.2d 623, 632 (D.S.C. 2010) (noting that tort is limited to *Lawson*'s two situations). The "public policy exception" to the at-will doctrine is to be very narrowly applied. *See Merck v. Advanced Drainage Systems, Inc.*, 921 F.2d 549, 554 (4th Cir. 1990).

Here, the plaintiff alleges that the defendant terminated him because of his opinions (amended comp. ¶ 22). The plaintiff does not allege, however, either that the defendant required him to violate the law or that the reason for his termination was itself a violation of the criminal law.

In response to the motion for summary judgment, the plaintiff does not dispute the foregoing, but cites a South Carolina statute that provides as follows:

> It is unlawful for a person to … discharge a citizen from employment or occupation … because of political opinions or the exercise of political rights and privileges guaranteed to every citizen by the Constitution and laws of the United States or by the Constitution and laws of this State.

S.C. Code Ann. ¶ 16-17-560. The plaintiff claims that the defendant violated this statute by terminating him because of his statement about Muslims.

The plain language of § 16-17-560 reveals that it does not protect all opinions, rights, and privileges. Instead, the statute expressly provides that it protects only political opinions, rights, and privileges. *Id.*; *see also Dixon v. Coburg Dairy*, 330 F.3d 250, 261 n.7 (4th Cir. 2003) ("*Dixon I*") ("The statute does not embrace every constitutional right, but only those can be labeled 'political' rights and privileges."), *vacated on other grounds by Dixon v. Coburg Dairy*, 369 F.3d 811 (4th Cir. 2004) (en banc) ("*Dixon II*"). The dictionary defines "political" as "of or relating to government, a government, or the conduct of government." Webster's Collegiate Dictionary 901 (10th ed. 1999). In *Culler v. Blue Ridge Elec. Coop.*, 422 S.E.2d 91 (S.C. 1992), for example, the plaintiff alleged his employment was terminated in violation of § 16-17-560 because he refused to contribute to a political action committee that gave campaign money to politicians who support cooperative utilities. *Id.* at 92. The South Carolina Supreme Court concluded that, if the plaintiff could prove his allegations, he would have a claim for wrongful discharge. *Id*. Ultimately, however, the court concluded that the trial court correctly found that the plaintiff had not proven the facts of his claim. *Id.*

Here, in contrast, the plaintiff alleges that he was terminated from employment because he made the following statements to a co-worker: "That's a shocker that a Muslim would be a terrorist!" and "Well, that might be so, but it seems to me that all terrorists are

6

Muslim" (comp. ¶¶ 4-12). The plaintiff's statements were in no way "political," but were instead his views of persons of a particular religion. Further, as argued by the defendant, if the statute was interpreted to cover statements such as the one at issue here, the statute would be in tension with Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. § 2000e-2(a)(1). If an employer fails to discipline an employee it reasonably believes harbors discriminatory animus against a particular religion and that employee later creates a hostile work environment for his co-worker on the basis of religion, the employer may be held liable for that harassing environment. *See, e.g., Mikels v. City of Durham*, 183 F.3d 323 (4th Cir. 1999) (adopting "failure-to-act-after-notice" standard of employer liability for Title VII hostile work environment claims). Section 16-17-560 should not be interpreted in such a way that it prohibits an employer from doing what Title VII requires – i.e., in some cases, terminating an employee who it reasonably believes could create a hostile work environment. *See, e.g., Dixon II*, 369 F.3d at 823 (Gregory, J., concurring) (noting tension between § 16-17-560 and Title VII); *Dixon I*, 330 F.3d at 263-64 (same). To do so would raise serious questions about whether §16-17-560 is valid in light of the Supremacy Clause.

Based upon the foregoing, the plaintiff's wrongful discharge claim should be dismissed.

***Defamation***

The defendant next argues that the alleged statements in the plaintiff's amended complaint are not actionable in defamation, and the plaintiff does not allege defamation with the requisite specificity. The elements of defamation are (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault on the part of the publisher, and (4) either actionability of the statement with or without special harm. *See Erickson v. Jones Street Publishing*, 629 S.E.2d 653, 665 (S.C. 2006).

The plaintiff alleges as follows in his amended complaint, "Defendant published false statements to Plaintiff's co-employees (including Jason Parker) and third parties (including future employers) asserting the Plaintiff was a racist, bigot and/or intolerant of other races and religions" (amended comp. ¶25).

The defendant argues that the plaintiff's allegations are pled with insufficient specificity as the plaintiff does not allege who made the statements or where, when, and why the statements were made. The defendant further argues that the plaintiff's failure in this regard precludes the court from concluding that the defendant is responsible for the alleged statements. The plaintiff contends that he would need discovery in order to plead with the "absolute specificity" demanded by the defendant. While the plaintiff's allegations are bare, this court finds that they are sufficient to put the defendant on proper notice of his claim. Accordingly, dismissal at this stage of the proceedings is not recommended.

***Workers' Compensation Retaliation***

Lastly, the defendant argues that the plaintiff's worker's compensation retaliation claim does not give rise to an inference of retaliation, and thus the claim should be dismissed. South Carolina Code Annotated § 41-1-80 prohibits employers from terminating their employees in retaliation for initiating a worker's compensation proceeding. To establish a claim under § 41-1-80, an employee must demonstrate three elements: (1) he initiated (or caused to be initiated) a worker's compensation proceeding; (2) he was discharged or demoted; and (3) a causal connection between the first two elements. *Hinson v. Designer Ensembles*, 540 S.E.2d 94, 97 (S.C. 2000).

In his amended complaint, the plaintiff alleges as follows:

14. On or about October 18, 2007, Plaintiff suffered a worker's compensation injury and reported the same to his employer, the Defendant. Plaintiff returned to work shortly thereafter. As a result of the injury Plaintiff suffered, he pursued workers' compensation benefits for his permanent injuries;

8

> 15. After Plaintiff's Workers' Compensation injury, Defendant singled out Plaintiff for disparate treatment and/or treated him more harshly in the terms and conditions of his employment, contrary to South Carolina law. These incidents include punishing Plaintiff for a humorous email pertaining to a "lost puppy" while not disciplining Plaintiff's peers for similar humorous emails pertaining to Charles Barkley and others. Essentially, Plaintiff was being singled out for disparate treatment;
>
> 16. On or about August 10, 2009, Plaintiff and Defendant resolved their workers compensation dispute. Just less than three months and a week later, Defendant discharged Plaintiff for the pretextual reason of the comments about terrorists. Plaintiff is informed and believes all these actions were the result of his institution and pursuit of a workers' compensation action . . . .

(Amended comp. ¶¶14-16).

The defendant argues that the plaintiff's allegations do not give rise to an inference of discrimination because over two years lapsed between the initiation of the plaintiff's workers' compensation claim and his termination from employment. This court finds that the plaintiff's allegations are enough to raise a right to relief above the speculative level and provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Accordingly, dismissal at this stage of the proceedings is inappropriate.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's first motion to dismiss (doc. 7) is moot, and it is recommended that the defendant's second motion to dismiss (doc. 16) be granted in part and denied in part as set forth above.

April 26, 2011                                             s/Kevin F. McDonald
Greenville, South Carolina                       United States Magistrate Judge